UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID N. MILLER,                          Civil Action No. 13-14297

      Plaintiff,

v.                                        HON. R. STEVEN WHALEN
                                   U.S. Magistrate Judge

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## OPINION AND ORDER

Plaintiff David N. Miller ("Plaintiff") brings this action under 42 U.S.C. §405(g),

challenging a final decision of Defendant Commissioner denying his applications for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the

Social Security Act. Both parties have filed summary judgment motions. For the reasons set

forth below, Defendant's motion for summary judgment [Docket #15] is DENIED and

Plaintiff's motion for summary judgment [Docket #12] is GRANTED to the extent that the

case is remanded to the administrative level for further administrative proceedings.

## PROCEDURAL HISTORY

On October 28, 2009, Plaintiff filed applications for SSI and DIB, alleging disability

as of October 27, 2007 (Tr. 212-213, 214-217). After the initial denial of the claim, he

requested an administrative hearing, held on November 15, 2010 (Tr. 32). On February 22, 2011, Administrative Law Judge ("ALJ") Christopher T. Skarda found that Plaintiff was not disabled (Tr. 98). On May 2, 2012, the Appeals Council remanded the case because (1) the ALJ failed to reconcile his assessment of Plaintiff's work abilities with a treating physician's opinion of disability (2) the ALJ's erroneously relied on a non-medical opinion, and (3) the residual functional capacity failed to state the interval at which Plaintiff needed to change positions (Tr. 100-101). The Appeals Council directed the ALJ to provide a rationale for Plaintiff's work-related abilities based on the medical transcript and to obtain further vocational testimony (Tr. 101).

On September 13, 2012, ALJ Oksana Xenos presided at a second administrative hearing in Fort Gratiot, Michigan (Tr. 58). Plaintiff, represented by attorney Frank Partipilo, testified (Tr. 61-77), as did Vocational Expert ("VE") Diane Regan (Tr. 77-81). On October 1, 2012, ALJ Xenos found that Plaintiff was not disabled (Tr. 26). On September 10, 2013, the Appeals Council denied review (Tr. 1-4). Plaintiff filed for judicial review of the Commissioner's decision on October 10, 2013.

## BACKGROUND FACTS

Plaintiff, born October 4, 1970, was just short of his 42nd birthday when the ALJ Xenos issued her decision (Tr.26, 212). He completed 10th grade (Tr. 244) and worked previously as a carpenter, cutter for a door-making company, and lawn maintenance worker (Tr. 240). His application for benefits alleges disability as a result of reading problems,

migraines, a left shoulder/clavicle condition, and hand, leg, and back problems (Tr. 239).

###### A.    Plaintiff's Testimony

Plaintiff offered the following testimony:

Plaintiff, right-handed, stood 5' 10" and weighed 180 pounds (Tr. 61-62).  He currently lived with his son (Tr. 62).  He last worked in 2007 at which time he held the job of "rough carpenter," but had also worked as a tree trimmer (Tr. 62-63).

Plaintiff stopped working after sustaining injuries in a bike accident (Tr. 63).  He had undergone surgeries to his leg and shoulder (Tr. 63).  He experienced constant pain on his left side (Tr. 63).  He rated his typical level of pain when taking Vicodin as a "seven" on a scale of one to ten  (Tr. 71).  Vicodin use created fatigue (Tr. 72).  Due to leg swelling, he needed to elevate his lower left leg above hip level while sitting (Tr. 73-74).  The leg problems resulted in the inability to get out of bed at least two days a week (Tr. 76).  He iced his leg three times a day for approximately 15 minutes at a time (Tr. 74).  He experienced migraine headaches lasting two to three days approximately twice a month (Tr. 75).  He coped with the headaches by taking medication and reclining in a darkened room (Tr. 75).

Plaintiff was unable to work due to the above-described physical problems, along with his inability to read or write (Tr. 63).  His work abilities were also hindered by longstanding memory problems (Tr. 70).  He had driven in the past but was not driving at present due to traffic infractions (Tr. 64).  He anticipated additional rotator cuff surgery and was currently scheduled for a needle arthroscopy of the shoulder for the following week (Tr. 64, 66).  He

was unable to walk more than 50 yards since his left leg was crushed in the bicycle accident (Tr. 64). He was unable to walk more than 20 to 30 yards on uneven surfaces (Tr. 71). He used a cane on an intermittent basis only, due to the pressure the assistive device put on his shoulder (Tr. 64).

Plaintiff was unable to sit for more than 20 minutes due to leg swelling (Tr. 65). He was unable to stand for more than 20 minutes at a stretch or lift more than five pounds (Tr. 65). Due to a hand fracture sustained 14 years earlier, he experienced arthritis in his right hand (Tr. 65). His left leg problems contributed most heavily to his inability to work (Tr. 71).

Plaintiff spent most his waking hours watching television and watching his son ride a motorcycle (Tr. 66). He did not ride motorcycles, attend church or grocery shop (Tr. 66-67). He no longer fished due to shoulder problems (Tr. 67). He followed the news on television but did not read newspapers (Tr. 68). He had been prescribed leg exercises and continued to undergo physical therapy for the shoulder (Tr. 68-69). Plaintiff smoked a pack of cigarettes each day but drank alcohol only once a month (Tr. 69). He did not sleep more than four to five hours each night but took two naps each day lasting between two and three hours (Tr. 69). He did not experience problems getting along with others (Tr. 69). His siblings visited him several times a week (Tr. 70).

-4-

### B.     Medical Evidence

In August, 2007, Plaintiff reported right knee pain after falling off a "four-wheeler" (Tr. 334). He received a knee brace (Tr. 334). In October and November, 2007, Plaintiff was hospitalized for four days following a bicycle accident (Tr. 365). Diagnoses included left tibial and left clavicular fractures as well as a collapsed left lung (Tr. 365). Orthopedic surgeon Cory D. Zieger, M.D. set Plaintiff's leg fracture (Tr. 361, 367). In January, 2008, Dr. Zieger performed surgery to correct the left clavicle fracture (Tr. 302, 351). Plaintiff reported continued shoulder pain at a followup appointment (Tr. 331). February, 2008 treating notes state that Plaintiff reported continued pain in both the leg and shoulder which had been exacerbated by having to sleep on the floor during a recent three-week jail stint (Tr. 330). In May, 2008, Dr. Zieger observed that Plaintiff had an antalgic gait and required the use of a cane due to the left knee problems (Tr. 329). In October, 2008, Dr. Zieger performed a  second left clavicle procedure (Tr. 300).

In January, 2009, Dr. Zieger recommended   physical therapy for the shoulder condition (Tr. 324). In February, 2009, Dr. Zieger performed a hardware removal procedure to the left knee after Plaintiff made "mild complaints of generalized left knee pain" (Tr. 299, 343, 345). Dr. Zieger prescribed Percocet, Motrin, and Vistaril for home use following surgery (Tr. 299). A February, 2009 MRI of the brain showed small ischemic changes possibly indicative of migraine headaches (Tr. 318). In April, 2009, Dr. Zieger performed a left total knee arthroplasty after Plaintiff reported "zero pain relief with past surgical

attempts" (Tr. 297-303, 337-341). Dr. Zieger's notes from the following month state that the incision was well healed (Tr. 322). Dopler studies showed no evidence of deep vein thrombosis (Tr. 335). Dr. Zieger recommended continued physical therapy (Tr. 322).

In March, May, and June, 2009, neurologist Demian Naguib, M.D. administered steroid injections to address the headaches (Tr. 306, 310, 315). In June, 2009, Dr. Naguib observed a normal gait and "no significant weakness in the upper or lower extremities" (Tr. 307). Dr. Naguib noted the absence of obvious cognitive limitations (Tr. 307). In August, 2009, Dr. Zieger noted that Plaintiff had recently injured his left knee, but denied instability or "any issues" related to his ability to perform activities of daily living (Tr. 321). Dr. Zieger prescribed Vicodin and physical therapy (Tr. 321).

In September, 2009, Nick J. Reina, M.D. examined Plaintiff, noting "complicated and deranged shoulder and knee joint" (Tr. 377). Dr. Reina remarked that he "suspect[ed]" that Plaintiff would "really now have chronic pain . . . the rest of his life" (Tr. 377). In February, 2010, Dr. Reina noted Plaintiff claim that he was unable to stand for more than 10 minutes (Tr. 442). Dr. Reina opined that Plaintiff was not "employable" (Tr. 442). In March, 2010, Dr. Zeiger opined that Plaintiff was unable to perform "manual labor" due to knee problems (Tr. 291). Dr. Zieger's treating notes from the same month noted "no apparent distress" (Tr. 472). He found that Plaintiff was doing "extremely well" but would likely experience pain "for the rest of his life" (Tr. 472).

In June, 2010, Dr. Reina, completed a Physical Residual Functional Capacity

-6-

Questionnaire on Plaintiff's behalf, finding that Plaintiff had a "poor plus" prognosis as a result of shoulder and knee pain[1] (Tr. 368). He found that Plaintiff's symptoms would interfere "constantly" with the ability to work and that Plaintiff was unable to perform even "low stress" jobs (Tr. 369). He found further that Plaintiff was incapable of sitting for more than 20 minutes at a time or standing for 10 (Tr. 369). He found that Plaintiff was unable to sit or stand for less than two hours in an eight-hour workday (Tr. 370). He found that Plaintiff required a left knee brace and was limited to lifting less than 10 pounds frequently and 10 pounds occasionally (Tr. 370). He determined that Plaintiff could not twist, stoop, crouch, or climb (Tr. 371).

The same month, Dr. Zeiger, found that Plaintiff was able "to perform activities of daily living without any problems" as of August, 2009 (Tr. 392). He stated that pain would "never" affect Plaintiff's concentration (Tr. 393). He found that Plaintiff could sit or stand for a total of more than two hours at a stretch, but stand/walk for less than two hours in an eight-hour workday (Tr. 393-394). He found that Plaintiff did not "necessarily" require leg elevation or an assistive device (Tr. 394). He found that Plaintiff could lift up to 10 pounds frequently and 20 to 50 pounds occasionally (Tr. 394). He found that Plaintiff could stoop, crouch, and climb occasionally and twist frequently (Tr. 395).

---

[1]While Plaintiff's brief states that the evaluation was completed in October, 2007, *Plaintiff's Brief, Docket #12,* 20, Dr. Reina did not commence treatment of Plaintiff until September, 2009 (Tr. 376, 428). The June, 2010 date used here is drawn from the fax transmission stamp at the top of the evaluation.

The same month, Plaintiff reported chest pain (Tr. 403). An x-ray showed "the appearance of emphysema," but "no active disease" (Tr. 424). Alexander Rutheven, M.D. noted that Plaintiff was depressed following his recent divorce (Tr. 417). He prescribed Xanax and Prozac in response to Plaintiff's report that he experienced mood swings (Tr. 408). A second assessment by Dr. Reina in or before November, 2010 found that Plaintiff was permanently impaired by the shoulder and knee conditions (Tr. 435). Dr. Reina mostly repeated his June, 2010 findings but found that Plaintiff was now unable to stand for more than five minutes (Tr. 436). Dr. Reina's accompanying treating notes state that Plaintiff was also developing "right hand pain related to arthritis" (Tr. 441).

A March, 2011 x-ray of the right hand showed "an old fracture deformity" and degenerative changes (Tr. 461). In April, 2011, Dr. Reina found that Plaintiff's condition was deteriorating (Tr. 460). He opined that Plaintiff was unable to work (Tr. 516-517). The same month, Dr. Zieger note that the fractured clavicle and knee had healed well (Tr. 475). Plaintiff declined an offer for steroid injections (Tr. 475). In February, 2012, Dr. Reina noted Plaintiff's report of continued left shoulder and left knee pain as well as right hand pain (Tr. 456). The same month, Dr. Ziegler noted that Plaintiff had a normal gait, but reported continued shoulder pain (Tr. 476). Dr. Ziegler administered a steroid injection to the shoulder (Tr. 477). The same month, Plaintiff underwent a hardware removal procedure to the left shoulder (Tr. 503). In July, 2012, Dr. Zieger found that Plaintiff could "gradually resume activities as tolerated" (Tr. 502). Physical therapy discharge notes from the same

-8-

month state that Plaintiff responded well to physical therapy (Tr. 485). The same month, Dr.

Reina noted that Plaintiff appeared to be in pain (Tr. 498). Diagnostic testing showed the

presence of a rotator cuff tear and labral tear to the left shoulder (Tr. 534, 545-546). In

August, 2012, David T. Hindy, M.D.opined that Plaintiff was unable to work from August

1, 2012 forward (Tr. 552, 555). In September, 2012, Dr. Reina again opined that Plaintiff

was disabled (Tr. 531-532). Surgery scheduling notes state that Plaintiff was scheduled to

undergo an additional procedure by Dr. Zeiger in September, 2012 (Tr. 561).


### C.        Vocational Expert Testimony

ALJ Xenos posed the following question to VE, describing a hypothetical

individual of Plaintiff's age, education and work experience:

> [A]n individual . . . who can perform work at the light[2] exertional level; can
> occasionally push and pull with his lower extremities; cannot climb ladders,
> ropes, or scaffolds; can occasionally climb stairs, and ramps; balance, stoop,
> kneel, crouch, and crawl; should avoid hazards such as moving machinery,
> unprotected heights, and uneven terrain; can occasionally reach overhead; is
> limited to unskilled, simple, repetitive work; and cannot operate foot or leg
> controls. Can an individual with that residual functional capacity and given

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds
at a time and occasionally lifting or carrying articles like docket files, ledgers, and small
tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50
pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and
that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with
frequent lifting or carrying of objects weighing up to 50 pounds.

profile perform any of his past work? (Tr. 78).

The VE replied that given the above limitations, the individual would be unable to perform any of Plaintiff's past relevant work but could perform the work of a small products assembler (8,000 position in existence in Southeast Michigan); inspector-checker (6,000); and packer (6,000) (Tr. 78-79). The VE stated that the inclusion of a sit/stand "at will" option would reduce the job numbers for the small assembly and inspector positions by 50 percent (Tr. 79). The VE testified the need for an assistive device for walking distances greater than 50 yards would not change the job findings (Tr. 79). She stated that if the originally described individual required a sit/stand option, an assistive device for walking over 50 yards, and were limited to sedentary work, he could performed the jobs of a sedentary packer (1,500); sedentary inspector (2,000); and sorter (2,000) (Tr. 79). The VE testified that if the same individual were "off task" for up to 20 percent of the workday due to the inability to sit, stand, or walk, all competitive work would be precluded (Tr. 80). The VE stated that her information was consistent with the information found in the *Dictionary of Occupational Titles* ("DOT") but that the DOT was not used to support her testimony regarding the sit/stand option (Tr. 80).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Xenos found that Plaintiff experienced the "severe" impairments of "status post left knee arthroplasty; history of left clavicle open reduction with internal fixation . . . ; shoulder pain, and osteoarthritis" but that none of the

-10-

conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (Tr. 15-16).   The ALJ determined that Plaintiff experienced the "non-severe"

impairments of headaches, chronic obstructive pulmonary disease . . . and bipolar disease

(Tr. 15).   She found that psychological restrictions in activities of daily living, social

functioning, and concentration, persistence, or pace were uniformly "mild" (Tr. 15).   The

ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for sedentary work

with the following limitations:

> [S]imple, unskilled, routine, low-stress, self-paced, non-production-oriented
> work; the claimant cannot climb ladders, ropes, or scaffolds; can occasionally
> climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; cannot
> operate foot/leg controls; should avoid hazards, such as moving machinery,
> unprotected heights, and uneven terrain; can occasionally reach overhead;
> requires a sit/stand at will option at the workstation; and requires an assistive
> device to ambulate distances greater than 50 yards (Tr. 16).

Citing the VE's job numbers, the ALJ determined that while Plaintiff was unable to

perform any of his past relevant work, he could perform the work of a packer, inspector,

or sorter (Tr. 25, 79).

The ALJ found that Plaintiff's allegations of limitation "significantly inconsistent with

the record" (Tr. 21).   The ALJ noted that Plaintiff's purported need to raise his leg above hip

level while sitting stood at odds with both Dr. Zieger's and Dr. Reina's findings that Plaintiff

was not required to elevate his legs (Tr. 22).   The ALJ found that the two treating physicians'

opinions were "difficult to reconcile," noting that while Dr. Reina found disability level

limitations, Dr. Zieger found that Plaintiff was able to perform a significant range of

-11-

sedentary work (Tr. 23).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services,* 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services,* 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In

evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence,

whether the claimant: 1) worked during the alleged period of disability; 2) has a severe

impairment; 3) has an impairment that meets or equals the requirements of an impairment

listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she

can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has

the burden of proof as steps one through four, but the burden shifts to the Commissioner at

step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The Credibility Determination

Plaintiff argues first that the ALJ erred by rejecting his testimony of functional

limitations.[3]  *Plaintiff's Brief, 13-16,* Docket #12.  He faults the ALJ's finding that his

professed degree of pain was "'exaggerated based upon the objective medical findings.'" *Id.*

at 14 (citing Tr. 22).  Citing SSR 96-7p, he contends that his ability to perform household

---

[3]In this section, I will also address Plaintiff's related argument that his mother's
account of his limitations was improperly rejected. *See Plaintiff's Brief* at 23-24.

-13-

chores on a sporadic basis does not constitute substantial evidence in support of the non-disability finding. *Id.* at 16.

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186,*2 (1996). The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.*

ALJ Xenos found Plaintiff "less than fully credible, with the allegations regarding limitations being significantly inconsistent with the record" (Tr. 22). She determined that Plaintiff "overstated and exaggerated the pain he testified to at the hearing, based on the medical reports and other objective evidence in the record" (Tr. 22). She cited Dr. Reina's observation of stabilized symptoms and Dr. Zieger's findings that Plaintiff was "doing better and feeling better" (Tr. 22). She cited a July, 2012 physical therapy report stating that Plaintiff had decreased pain (Tr. 22).

ALJ Xenos' credibility determination is not supported by the record. As to the first prong of SSR 96-7p, numerous and aggressive surgical procedures to correct shoulder and knee conditions resulting from the 2007 injuries support Plaintiff's allegations of pain.

-14-

Notably, as of September, 2012 (five years following the bike accident), Plaintiff was scheduled to undergo yet another surgery - this time to repair rotator cuff and labral tears to the left shoulder (Tr. 534, 545-546). Plaintiff's allegations of pain as a result of the crushed left leg and shoulder injuries are well established by the objective evidence and uncontradicted by other evidence.

The ALJ's analysis of the second prong of SSR 96-7p is also problematic. Under the second prong, the adjudicator must consider the entire case record when the claimant's allegations do not appear to be supported by the medical evidence. *Id.* at * 2. The ALJ supported her second prong findings by citing treating source findings that Plaintiff was "stabilized," "doing better and feeling better," and experienced decreased pain after undergoing physical therapy (Tr. 22). However, the fact that his condition "improved" after undergoing several surgical procedures for the leg, knee, and shoulder conditions does by itself support the conclusion that he did not continue to experience significant pain. The ALJ's reliance on Dr. Reina's statement that Plaintiff's symptoms had "stabilized" is particularly questionable, given that Dr. Reina opined on several occasions that Plaintiff's pain precluded him from all work.

The ALJ's second prong discussion contains additional deficiencies. Under 20 C.F.R. § 404.1529(c)(3) the she was required to consider factors such as "daily activities;" "location, duration, frequency, and intensity" of pain; medication and side effects; and additional measures used to relief pain in making the credibility determination. While the

-15-

ALJ placed controlling weight on scattered treating statements that Plaintiff's condition had "improved," she ignored the import of his need for six surgical procedures (and a seventh scheduled operation) between the alleged 2007 onset of disability and October, 2012 decision.   An ALJ must not "unduly concentrate on one single aspect of the claimant's history, if that one aspect does not reasonably portray the reality of the claimant's circumstances." *Rogers v. Commissioner of Social Sec.,* 486 F.3d 234, 249 (6th Cir. 2007), *accord Houston v. Sec'y of Health & Human Servs.,* 736 F.2d 365, 366 (6th Cir.1984)("determinations [must] be made based upon the record in its entirety").

While the ALJ cited Plaintiff's July 6, 2012 statement that "his shoulder was feeling 'quite a bit better,'" the fact that Plaintiff felt "better" than before does not establish that he did not continue to disability level pain. The ALJ's reliance on the July 6, 2012 "quite a bit better" statement is undermined by a needle arthroscopy performed just three days later showing labral and rotator cuff tears to the left shoulder requiring surgery (Tr. 21, 534, 561). Notably, the ALJ ignored Dr. Reina's July, 2012 observation that Plaintiff exhibited significant discomfort despite the fact that the described symptoms were wholly consistent with the diagnostic studies showing labral and rotator cuff tears (Tr. 21, 498). Plaintiff's willingness to repeatedly endure aggressive medical treatment and his continued use of narcotic pain medication strongly supports his allegations of ongoing pain. *See Rogers, supra,* 486 F.3d at 248 ("Consistency between [professed symptoms] and the other evidence in the record tends to support the credibility of the claimant . . ."); *Payne v. Commissioner*

*of Social Sec.,* 2011 WL 811422, *6  (W.D.Mich. February 11, 2011)(failure to consider effect of  "multiple surgeries" undermined credibility determination).   The myopic emphasis placed on isolated findings at the expense of the remainder of the record casts doubt upon the credibility determination.

The credibility determination is additionally undermined by the ALJ's outright rejection of Plaintiff's mother's account of her son's limitations because they were "based on observation rather than objective medical . . . testing" and "loyalties of family" (Tr. 15). Pursuant to SSR 06–3p, the ALJ may consider evidence from "other sources" such as family members whose observations may be helpful in developing an assessment of a claimant's limitations. 2006 WL 2329939, *2 (2006); 20 C.F.R. § 404.1513(d)(4).  In weighing the opinions of "other sources," it is "appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence."

First, the ALJ provided no rationale for her conclusion that the mother's statement was colored by bias.  While the ALJ discounts the mother's statement because it is a "lay opinion," this reasoning could be improperly used to discount statements by any family member.   Second, the mother's account of Plaintiff's exertional, postural, and concentrational limitations as a result of pain is generally consistent with Dr. Reina's assessment, Dr. Hindy's disability finding, and Plaintiff's need to undergo repeated surgical procedures (Tr. 257-259, 369-371). Plaintiff's mother's observations are consistent with the

-17-

medical evidence supporting Plaintiff's allegations.

In *Smith v. Heckler*, 735 F.2d 312, 313 (8th Cir.1984), the Court stated:

> "Descriptions of friends and family members who were in a position to observe the claimant's symptoms and daily activities have been routinely accepted as competent evidence. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987); 20 CFR § 404.1529(c)(3). A disregard for such evidence violates the Commissioner's regulations about observations by nonmedical sources as to how an impairment affects a claimant's ability to work. *Id. When an ALJ fails to believe lay testimony about a claimant's allegations of pain or other symptoms, he should discuss the testimony specifically and make explicit credibility determinations.*" (Emphasis added).

See also *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir.1996) ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value; such lay witnesses will often be family members." (citation omitted)); *Regennitter v. Comm. of the Social Sec. Admin.,* 166 F.3d 1294, 1298 (9th Cir.1999) (noting claimant's mother's testimony, explaining that such lay testimony "provides an important source of information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness." (citing *Smolen* )).

For all of these reasons, the ALJ's credibility determination is unsupported by substantial evidence.

### B. The Treating Physician Analysis

Plaintiff also argues that the ALJ erred by declining to give controlling weight to Dr. Reina's treating opinion. *Plaintiff's Brief* at 18-21. Plaintiff faults the ALJ's finding that Dr.

Reina's opinion was not supported by objective testing. *Id.* at 18-19 (citing Tr. 21). Plaintiff disputes the finding that Dr. Reina's opinion was not well supported, noting that Dr. Reina reviewed Dr. Zieger's orthopedic findings when the treating relationship commenced and was presumably aware of subsequently created objective studies. *Id.* at 20.

If the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir.2009) (internal quotation marks omitted) (citing *Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir.2004); 20 C.F.R. § 404.1527(c) (2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2)). In explaining reasons for rejecting the treating physician opinion, the ALJ must consider "the length of the ... relationship and the frequency of examination, the nature and extent of the treatment [,] ... [the] supportability of the opinion, consistency ... with the record as a whole, and the specialization of the treating source." *Wilson*, at 544.

The failure to articulate "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir.2013); *Wilson*, 378 F.3d at 544–546 (6th Cir.2004)(citing § 404.1527(c)(2)). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination

or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir.2011). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart*, at 376 (citing SSR 96–2p, 1996 WL 374188, *5 (1996)).

The ALJ's reasons for rejecting Dr. Reina's findings that Plaintiff was unable to sit even two hours or walk/stand for six over the course of an eight-hour workday are only superficially supported (Tr. 23). The ALJ noted that she accorded greater weight to Dr. Zieger's finding less restrictive findings because Dr. Zieger was an orthopedic surgeon (Tr. 24). The ALJ also supported Dr. Zieger's findings by noting that Dr. Zieger "clearly conducted some objective testing as to the claimant's range of motion, which is lacking in Dr. Reina's opinion" (Tr. 24). The ALJ found that both physicians' opinions would allow for a range of sedentary work (Tr. 24).

The ALJ's reliance on Dr. Zieger's June, 2010 opinion is also of concern. First, Dr. Zieger's opinion predates a significant portion of the records. While Dr. Zieger opined that as of August, 2009, Plaintiff's symptoms would last more than 12 months, Dr. Reina's subsequent September, 2009 examination notes state that Plaintiff would have permanent, chronic pain (Tr. 377, 392). Dr. Reina's opinion that Plaintiff was unable to perform any work is supported by his February, 2010 observation that Plaintiff was unable to stand for more than 10 minutes (Tr. 442). Dr. Zeiger's opinion that Plaintiff would be expected to

-20-

recover within 12 months is undermined by March, 2011 findings that Plaintiff experienced arthritis of the right hand resulting from an earlier hand fracture (Tr. 461). Likewise, Plaintiff's need for hardware removal surgery in June, 2012 and the diagnosis of labral and rotator cuff tears the following month stand at odds with Dr. Zieger's earlier assessment. As a general rule, "updated" medical records are to be accorded more weight than older ones. *See Hamblin v. Apfel*, 2001 WL 345798, *2 (6th Cir. March 26, 2001) (affirming an ALJ's rejection of a treating physician's "outdated" opinion on the basis that a consultive physician had performed a more recent appraisal with contradicting findings). The ALJ's reliance on Dr. Zieger's earlier assessment also stands at odds with Dr. Hindy's August, 2012 finding that Plaintiff should remain "off work" (Tr. 21). The ALJ stated that she accorded more weight to the opinion to Dr. Zieger's opinion than Dr. Hindy's because of Dr. Zieger's orthopedic specialization (Tr. 21). However, Dr. Hindy's disability opinion appears to have been written in response to the recent diagnosis of labral and rotator cuff tears, whereas Dr. Zieger's opinion was issued long before that diagnosis (Tr. 461, 552, 555).

Further, while the ALJ discounted Dr. Reina's "inconsistent" opinion on the basis that Dr. Reina found that Plaintiff could walk 50 yards on one occasion and an entire city block on another, the finding that Plaintiff was capable of 50 yards walking on one occasion and a modestly longer distance on another does not invalidate the pain specialist's finding that Plaintiff was unable to perform any work[4] (Tr. 22). Finally, while the ALJ reasoned that both

---

[4]

Fifty yards equals approximately .57 of a "city block." http://www.convertunits.com

-21-

Dr. Zeiger's and Dr. Reina's assessments allowed for the performance of sedentary work (Tr. 24), Dr. Reina's finding that Plaintiff was incapable of sitting, standing, or walking for even two hours (presumably leaving Plaintiff to recline for the remainder of the day) would preclude even exertionally sedentary work.

Consistent with my findings, a remand is required. The final question is whether to remand for further fact-finding or an award of benefits or for further fact-finding. Because the present transcript establishes a strong but not "overwhelming" case for disability, the errors discussed herein, while critical, do not automatically entitle the Plaintiff to an award of benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171 (6th Cir.1994). Accordingly, the case should be remanded to the administrative level for further proceedings consistent with this opinion.

With due respect to ALJ Xenos, and certainly without questioning her impartiality and good faith in rendering the decision under review, I do note that her findings, especially with regard to Plaintiff's credibility, were fairly pointed. It would therefore be prudent, in order to assure that the Plaintiff and the public have complete confidence in the result on remand–whatever that result is–to remand for a hearing before a different ALJ.

## CONCLUSION

For the reasons stated above, Plaintiff Defendant's motion for summary judgment

---

/from/50+yards/to/city+blocks. (Last visited October 28, 2014).

[Docket #15] is DENIED and Plaintiff's motion for summary judgment [Docket #12] is GRANTED to the extent that the case is remanded to the administrative level for further fact-finding. It is also ordered that the case be assigned to a different ALJ on remand.

Judgment shall enter in favor of Plaintiff and against Defendant.

IT IS SO ORDERED.

R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: October 31, 2014